1  Konrad L. Trope, Esq. SBN 133214
   **Novo Law Group, P.C.**
2  4631 Teller Avenue, Suite 140
   Newport Beach, California 92660
3  (949) 222-0899 (tel)
   (949) 222-0983 (fax)
4
   Attorneys for Plaintiff Pacific Information Resources, Inc.
5

6

7                    **UNITED STATES DISTRICT COURT**

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9

10
   Pacific Information Resources, Inc., a          )   **CASE NO.  CV-07-4131  MMC**
11 California Corporation,                          )
                                                    )   **[Before the Honorable Maxine M.**
12              Plaintiff,                          )   **Chesney, Courtroom 7]**
                                                    )
13      vs.                                         )   **PLAINTIFF'S MEMORANDUM OF**
                                                    )   **POINTS AND AUTHORITIES IN**
14 SIMPLE COMMUNICATIONS, an Alabama               )   **SUPPORT OF APPLICATION FOR**
   corporation; WILLIAM TRAVIS SULLIVAN,           )   **DEFAULT JUDGMENT BY COURT**
15 individually, AND DOES 1 through 100,            )
   inclusive, WHOSE IDENTITIES ARE                 )   [Filed Concurrently with Notice of
16 UNKNOWN,                                         )   Application and Application for Default
                                                    )   Judgment by Court, Declaration of Konrad L.
17              Defendants.                         )   Trope, Pacific's Request for Judicial Notice
   _____             )   Declaration of Timothy J. Koster, Declaration
18                                                      of Expert Hayden Bond, Declaration of
                                                        Expert Ran Hadas, Ph.D. and [Proposed]
19                                                      Order Lodged Concurrently Herewith]

20                                                      Complaint Filed:    August 9, 2007
                                                        Default Entered:    October 2, 2007
21
                                                        Hearing Date:       April 4, 2008
22                                                      Hearing Time:       9:00 a.m.
                                                        Department:         7
23

24

25

26                                         1
   _____
27 **Memorandum of Points and Authorities in Support of Application for Default Judgment**
                                    **by Court;**
                                                        **Case No. CV-07-4131**
28 pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1

## MEMORANDUM POINTS AND AUTHORITIES

2

3    **I.    FACTUAL BACKGROUND/PROCEDURAL HISTORY**

4          Plaintiff Pacific Information Resources, Inc. ("Plaintiff" or "Pacific") owns and operates

5    the website located at www.searchsystems.net (the "WEBSITE").  Pacific has registered two

6    copyrights concerning the WEBSITE.  One registration, bearing Registration No. TX 6-275-368

7    protects the text of the WEBSITE, bearing the URL www.searchsystems.net.  In addition, Pacific

8    has a copyright registration, bearing Registration No. TX 6-275-367 which protects the PHP

9    Hyper Text Processor source code of the WEBSITE.  True and correct copies of the copyright

10    registrations are attached to the Declaration of Tim Koster ("Koster Decl.") filed concurrently

11    herewith as *Exhibit "1"* and incorporated herein.

12          Pacific also has a registration from the United States Patent and Trademark Office for its

13    service mark consisting of the word mark "search systems" within a design or drawing bearing

14    USPTO Trademark Registration No. 2019094 (the "SERVICE MARK").  A true and correct

15    copy of this registration for Plaintiff's registered SERVICE MARK is attached to the Koster

16    Decl. as *Exhibit "2"* and incorporated herein.  In addition, Pacific has continuously, for the

17    preceding five years, at the very least, continuously and openly used variations on its registered

18    SERVICE MARK, but such variations, while not registered, have acquired secondary meaning

19    and thus are protected as more fully described herein.

20          Pacific's registered SERVICE MARK and unregistered service marks are collectively

21    hereinafter referred to as the "SERVICE MARKS".  The unregistered but protected SERVICE

22    MARKS of Plaintiff include, but are not limited to, the terms:  "searchsystems",

23    "searchsystems.net".  *See Koster Decl at ¶ 4.*

24          Pacific's business is providing members of the public with access to the public records

25    maintained by various federal, state and local governmental agencies.  The applicable

26
                                                1
27    **Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**
      **Case No. CV-07-4131**
28    pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1  governmental agency typically maintains those records in some kind of a searchable database.

2  Those individual databases aggregate a variety of business information, including items such as:

3  corporate filings, criminal and civil court filings, vital records, property records, unclaimed

4  property, professional licenses, bankruptcies, judgments, tax liens, and various other matters

5  compiled from public records. *See Koster Decl at ¶¶ 5-6.*

6       Until the WEBSITE commenced operations in 1997, it was not possible to search for

7  individual results simultaneously across a multitude of databases.  As a result, a member of the

8  public attempting to locate a particular piece of information would have to laboriously search

9  each one of thousands of individual databases.  Pacific developed the technology, which is

10  implemented on the WEBSITE, to search all of these constituent databases, simultaneously. *See*

11  *Koster Decl at ¶ 7.*

12       Rather than speculating as to the availability of a desired public record, or where to locate

13  it on the Internet, a user simply can log on to Pacific's website, and have access to all of the

14  publicly-available information that exists, and that is indexed and cross-referenced on the

15  WEBSITE.  Furthermore, the user avoids the cumbersome necessity, with attendant time and cost

16  constraints, of consulting each one of the individual databases, if more than one of them

17  potentially contains the desired information. *See Koster Decl at ¶¶ 7-8.*

18       In order to accomplish this outcome, Pacific has developed a proprietary "search"

19  computer program that enables a user to search for particular records, whereby the user executes

20  a "global" search of all of the thousands of databases indexed and cataloged by Plaintiff, by

21  entering key search terms and parameters.  Coupled with the search feature is a "link" feature that

22  enables a user to "click" on the content description for an individual database, the existence of

23  which was disclosed by the search, whereupon the user automatically is re-directed to that

24  database. *See Koster Decl at ¶ 9.*

25

26

27  **Memorandum of Points and Authorities in Support of Application for Default Judgment**

28  
2
**by Court;**

**Case No. CV-07-4131**

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    Pacific now provides the public with access to over 35,821 linked individual databases,

2  comprising billions of public records.  Before linking a new database to the WEBSITE, Pacific

3  evaluates each database for content and usefulness.  Pacific also authors a complete description

4  of the database, so as to facilitate its identification and use.  *Id at ¶ 10.*

5    Pacific's WEBSITE has been "on line" since the dawn of the Internet in 1997, and the

6  WEBSITE has been extremely successful.  In fact, the WEBSITE now is the primary "entry"

7  portal for access to free public records on the Internet.  Indeed, Plaintiff has expended millions of

8  dollars with financial resources and countless hours of time, effort, and energy in developing,

9  operating and promoting the WEBSITE.  Moreover, similar features of the WEBSITE,

10  previously identified above, have required an extraordinary expenditure associated with the

11  research and development of these features as part of maintaining, improving and updating the

12  WEBSITE.  *Id. at ¶¶ 11-12.*

13    As a reflection of the reputation and success of the WEBSITE, numerous publications

14  have reviewed, praised and identified the WEBSITE as a major or the definitive website for

15  access to free public records on the Internet.  These publications and articles encompass the

16  period 1998 to present with recent articles in The New York Times describing the WEBSITE in

17  very positive terms in articles published on November 5 and November 13, 2005.  See true and

18  correct copies of The New York Times articles concerning Plaintiff's WEBSITE attached to the

19  Koster Decl. as *Exhibit "3"* and incorporated herein.

20    In addition, other publications have, over the years, repeatedly praised the WEBSITE:

21  Yahoo Internet Life magazine named the WEBSITE in July, 2002 as one of the Internet's "50

22  most incredibly useful sites"; PC World named the WEBSITE in February, 2003 as one of "the

23  most useful sites ever"; the Wall Street Journal on September 15, 2003 called the WEBSITE

24  "one of the best"; and recently as March 16, 2006 Poynter Online, a website devoted to

25

26
_____
3

27  **Memorandum of Points and Authorities in Support of Application for Default Judgment
by Court;**

28  **Case No. CV-07-4131**

journalists and providing resources to them, described the WEBSITE as a resource enabling journalists "to enrich stories and dig deeper." *Id. at ¶¶ 13-14*.

In addition, another publication devoted to journalism, The Columbia Journalism Review, in July, 2003 described the WEBSITE as "the best site for finding public records." See true and correct copies of articles concerning Plaintiff's WEBSITE attached to the Koster Decl. as *Exhibit "4"* and incorporated herein.

Moreover, the WEBSITE has consistently been ranked by various Internet search engines such as Google, Yahoo, MSN and AOL as the "number 1" database for public records, over the past five years. The WEBSITE is the first listing to appear after a search for the phrase "public records" when using the above-listed search engines. *See Koster Decl at ¶ 16.*

Plaintiff Pacific has certainly since 2001, if not earlier, openly posted on its WEBSITE a section known as "Terms of Service" ("TOS") which essentially, inter alia binds the user of the WEBSITE to the Terms of Service otherwise the potential user is not authorized to access the WEBSITE. As part of the TOS, the following are defined: acceptable usage of the WEBSITE, use of the WEBSITE limited to personal use, hyperlinking being prohibited, limits on advertising, appropriate copyright and SERVICE MARKS notices, as well as disclaimer of warranties, limitation of liability, and choice of law. A true and correct copy of the TOS is attached to the Koster Decl. herein as *Exhibit "5"* and incorporated herein.

There came a time (within the expiration of any applicable statute of limitations) when the Airon Defendants embarked upon a scheme to copy the "source code" comprising the computer program that runs the WEBSITE. That source code presently is written in PHP, which stands for "PHP": "Hypertext Processor" ("PHP"). PHP is a programming language used for developing dynamic web content, whereby the WEBSITE's content is updated seamlessly and continuously in real time as new or additional records are attached to the thousands of databases accessed through the WEBSITE, such as that found on the WEBSITE. *See Koster Decl at ¶ 18.*

**Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

**Case No. CV-07-4131**

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1      When Plaintiff originally developed the WEBSITE hosted at EarthLink in 1996 and the

2  subsequent website at www.pac-info.com (released in 1998) the WEBSITE was designed in

3  HTML which stands for "Hyper Text Markup Language".  Moreover at the time the WEBSITE

4  did not have any technical protocols or technological protocols to guard from theft.  *Id. at ¶ 20*.

5      Plaintiff Pacific commenced developing a new WEBSITE that was programmed in PHP

6  in 2001.  Plaintiff's revised deployment of its website in PHP was an unequivocal attempt by

7  Plaintiff to repel the various Defendants' "copying" incursions onto the WEBSITE.  Each link

8  destination as written and programmed in PHP for the WEBSITE, was entered into Plaintiff's

9  database in a manner so that if and when Defendant Musselman or others tried to copy Plaintiff's

10  WEBSITE pages, they would find Link ID's corresponding to the link in Plaintiff's database but

11  not the ultimate URL (Uniform Resource Locator).  *Id. at ¶¶ 21-23*.

12      Plaintiff's programming changes from HTML to PHP were incorporated into a new

13  WEBSITE and web pages at www.searchsystems.net and released in 2001.  The prior

14  programming located at pac-info.com was discontinued and all traffic to www.pac-info.com was

15  forwarded to www.searchsystems.net.

16      Plaintiff Pacific in and about April, 2005 then changed the WEBSITE again and released

17  a new version of the WEBSITE at www.searchsystems.net which is now a "framed" WEBSITE

18  so that even if a party determined to circumvent the technological measures deployed by Plaintiff

19  that effectively control access to the Database, the URL for a particular link is hidden by the

20  frame.  Plaintiff has also instituted a system in which the Database Link ID is hidden by a

21  programming system called "MD5" which is a "hash" algorithm that creates a random stream of

22  letters and numbers.  Thus, anyone that clicks on to Plaintiff's website now will see the random

23  MD5 code rather than the numbered Link ID for a particular Database.

24      In or about 2005, Plaintiff Pacific became aware that some party or parties had gone

25  through and copied the content of Plaintiff's WEBSITE and had gone through the diligent and

26

27  **Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

                                                             **Case No. CV-07-4131**

28  pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1  intentional effort of determining the location of each URL for each coded link in Plaintiff's

2  website.  In other words, these parties deliberately and intentionally circumvented the various

3  technological measures deployed by Plaintiff that effectively controlled access to the Database

4  contained within the WEBSITE.  *Id. at ¶ 24*.  The acts of theft and infringement and fraud

5  committed by the Airon Defendants as described hereinabove still continues to this day as more

6  fully described herein below.  *Id. at ¶ 26-29.*

7       Indeed it appears that the Airon Defendants invaded the WEBSITE, whereby they

8  successfully circumvented the technological measures deployed by Plaintiff to protect Plaintiff's

9  copyrighted works, including, but not limited to inter alia Plaintiff's source code and Plaintiff's

10  proprietary layout, design and organization of the data and links.

11       As shown by the Expert Report filed herewith of Professor Hadas, the Airon Defendants

12  circumvented the codes Plaintiff developed to mask the public Universe Resource Locators of all

13  of the links to the thousands of public databases Plaintiff had established comprising the

14  WEBSITE.  Because of the unique syntax and semantics of those links, Plaintiff Pacific has been

15  able to determine that they are in fact the links written by Plaintiff, as opposed to any original

16  creation of the Airon Defendants.

17       Furthermore, the Airon Defendants copied *inter alia*:  (1) Plaintiff's selection of pertinent

18  links; (2) Plaintiff's scheme of organization for the links; (3) the categories into which the links

19  are organized; (4) and the actual original descriptions that Plaintiff authored to describe each

20  link, and (5) the database to which it directed the user.  *Id. at ¶¶ 28-31.*

21       Shortly after the Airon Defendants commenced their illegal pirating of Plaintiff's

22  WEBSITE, Plaintiff was inundated with complaints from persons who had paid for access to one

23  of the Airon Defendants' sites, but who thought they were accessing the WEBSITE (i.e.,

24  Plaintiff's WEBSITE).  *See Koster Decl at Exhibit "6."*  This in turn lead to considerable

25

26
_____
                                    6
27  **Memorandum of Points and Authorities in Support of Application for Default Judgment**
                              **by Court;**
                                              **Case No. CV-07-4131**
28  pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1  discussion of the WEBSITE in various on-line forums, which are and have become even more

2  influential in determining the behavior and selections made by Internet users. *Id. at ¶ 31*.

3       Many of the remarks pertaining to the WEBSITE were adverse, and Plaintiff was required

4  to devote considerable time, money, energy and expertise to maintaining its business

5  relationships with its existing customers, and to fortify the potential economic advantages it

6  anticipated deriving by transacting with future customers. The sort of "negative feedback" that

7  Plaintiff received as a result of the Airon Defendants' unlawful activity is particularly ominous

8  for a company such as Plaintiff, which depends for its economic sufficiency and vitality upon the

9  goodwill and continued patronage of its customers. And, given the persistency of feedback loops

10  such as those that are developing on the Internet, even a few negative recommendations have the

11  potential to wreak devastating consequences. *Id. at ¶ 31*.

12       A.    <u>Refusal by Simple Defendants to Comply with DMCA</u>

13       In or about December of 2006, counsel for Plaintiff Pacific ascertained that the internet

14  service provider ("ISP") for the Airon Defendants was Defendant Simple Communication, Inc.,

15  an Alabama corporation. *See Trope Decl at ¶ 3 filed concurrently herewith*. An ISP is the

16  entity that "hosts" a website so that the *websurfers* can access the content of the website. An ISP

17  may also provide "internet access" to individual subscribers. *See Hadas Decl at ¶¶ 29-40*.

18       However, under the DMCA, when there is an action pending in Federal Court which also

19  seeks injunctive relief, against an offending defendant, the ISP has no discretion under the

20  DMCA and must take down the offending material.

21       In proper compliance with the DMCA, counsel for Plaintiff Pacific requested, in writing,

22  to the Simple Defendants that the websites belonging to the Airon Defendants be "taken down."

23  *See Exhibit "1" to Trope Decl.* At first, Defendant Sullivan acted as if he was going to comply,

24  then he refused, despite the mandates of the DMCA, which in this case, provide him with no

25  discretion. *See 17 U.S.C. §§ 512, et. seq. and Trope Decl. at ¶¶ 4-5*.

26  _____

27  **Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

**Case No. CV-07-4131**

28  pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    The Complaint in this action was filed on or about August 9, 2007. The Complaint was

2    served on or about August 21, 2007. A Request for Entry of Default was granted on or about

3    October 2, 2007.

4    Attached hereto and incorporated herein as Exhibit "1" are true and correct copies of my

5    initial emails sent to Defendant William Travis Sullivan, in his capacity as the President and

6    CEO of Defendant Simple Communications, the latter Defendant being the entity that provides

7    web hosting services to Airon Corporation (owned and operated by Alexei Borisov and Levon

8    Gasparian). Airon Corporation as well as Messrs. Borisov and Gasparian are Defendants in the

9    core related action of *Pacific Information Resources v Diana Musselman, Airon Corporation, et.*

10   *al.*, pending before this Honorable Court in Case No. 06-02306 MMC.

11   Under the Digital Millennium Copyright Act ("DMCA") (*17 U.S.C. §§ 1201, et. seq.*), if

12   an internet service provider (ISP) receives a request to take down content that it is hosting on the

13   internet, it is to contact the owner of the potentially offending material and then evaluate whether

14   or not, the material requires being withdrawn from being posted on the internet.

15   As shown by Exhibits "1" through "3" attached herein, which are various email

16   exchanges, during the period of January through June of 2007, despite repeated requests,

17   Defendants William Travis Sullivan and Simple Communications, Inc. ("Simple Defendants")

18   refused to comply with the mandates of the DMCA as well the DMCA. In light of the pending

19   action in the core case of *Pacific v Diana Musselman, Airon, et. al.*, Case No. 06-02306 MMC

20   (the "Main Case") in which *inter alia* copyright infringement and injunctive relief are being

21   sought against the Airon Defendants, the Simple Defendants have no discretion under the DMCA

22   to reject a request to "take down." *See U.S.C. §§ 1201 et. seq.*

23   Despite repeated attempts to explain the mandates of the DMCA to the Simple

24   Defendants, in particular Defendant Sullivan, Pacific's request for compliance with the DMCA

25

26

___

8

**Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

27

**Case No. CV-07-4131**

28

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

went unheeded.  Mr. Sullivan referred Pacific's counsel to an attorney in Alabama who never

responded to any phone call or emails.

In light of the foregoing, we had no choice but to draft and file this instant action against

the Simple Defendants for their blatant violation of the DMCA, as their illegal conduct directly

as well as vicariously and contributorily and indirectly harms Plaintiff Pacific Information

Resources.

## II.    LEGAL ANALYSIS

Plaintiff believes proximate cause has been properly alleged in the Complaint and thus it

is admitted upon default.  Thus Plaintiff only need to prove that the "compensation sought relates

to the damages that naturally flow from the injury."  *Greyhound Exhibitgroup, Inc. v E.L.U.L.*

*Realty Corp.*, 973 F.2d 155, 159 (2nd Cir. 1992).

Plaintiff does not see the necessity of a court trial or a jury trial on the damages issue.

Rather, instead, Plaintiff requests that the Court fix damages on the basis of the attached

Declarations of Konrad L. Trope, retained expert for Plaintiff, Hayden Bond and retained expert

Professor Ran Libeskind-Hadas.  *See Transportes Aeros De Angola v Jet Traders Invest. Corp.*,

624 F.Supp. 264, 266 (D. Del. 1995).

### A.    Prejudice to Plaintiff if Relief is Denied

In addition to awarding damages, Plaintiff also seeks the entry of a proposed permanent

injunction which has been filed concurrently herewith.  It is requested that the injunction be

entered in addition to the awarding of damages in order to prevent a multiplicity of actions that

would be created by repeat conduct of either Defendants Simple Communications and William

Travis Sullivan ("Simple Defendants") or their clients/customers: Airon Corporation, Levon

Gasparian and Alexei Borisov wh are named defendants ("Airon Defendants") in the main core

related action of *Pacific Information Resources v Musselman, Airon, et. a.*, USDC Case No. CV-

06-2306.

**Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

**Case No. CV-07-4131**

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    As shown by (a) the prior civil conviction against the Airon Defendants for copyright

2    infringement in the Southern District of New York (See Exhibit "1" to Request for Judicial

3    Notice filed concurrently herein ("RJN")); and (b) the permanent injunction against the Airon

4    Defendants involving their illegal copying activities of Microsoft products, (See Exhibit "2" to

5    RJN), it is requested that permanent injunction be entered against Simple Defendants in order to

6    prevent any further violations and/or repetitive illegal actions by the Simple Defendants who are

7    actively acting in concert with the Airon Defendants.

8        **B.    Proof of Liability**

9    Furthermore, Plaintiff Pacific has also established a prima facie case for liability on all

10   claims against the Simple Defendants. The Simple Defendants have never appeared or responded

11   in any fashion to:

12       a.    personal service of the complaint;

13       b.    notice of entry of default; or even

14       c.    notice of court orders concerning scheduling in this matter.

15   *See Sony Computer Ent. America, Inc. v. Divineo, et. al.,* 457 F.Supp.2d 957, 967-968 (N.D. Cal.

16   2006).

17   Moreover, once the Simple Defendants, as an ISP, had actual knowledge of the infringing

18   material being posted by the Airon Defendants, they lost all safe harbor protections under the

19   DMCA unless they complied with the requirements of Section 512 ( c) (2), (3), and Section 512 (

20   I) of the DMCA. *See Online Policy Group v. Diebold, Inc.,* 337 F.Supp.2d 1195, 1200-1201

21   (N.D. Cal. 2004) *citing and explaining 17 U.S.C. § 512.* However, the Simple Defendants

22   ignored all requests for compliance with the DMCA.  *See Exhibits 1-3 to Trope Declaration and*

23   *Paragraph 6 therein.*

24

25

26
_____
                            10
27   **Memorandum of Points and Authorities in Support of Application for Default Judgment
     by Court;**
                                          **Case No. CV-07-4131**
28   pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    Furthermore, as described *supra,* the ongoing and continuing violation of the DMCA by

2    the Simple Defendants also comprises all of the illegal conduct described in Plaintiff's Claims

3    for Relief [(1) through (22)] in Plaintiff's Complaint, at Paragraphs 29-263.

4    In addition, liability of the Airon Defendants is conspicuous and prominent.  Filed

5    concurrently herewith is the expert report of Professor Ran Hadas, Ph.D., Chairman of the

6    Computer Science Department at Harvey Mudd College.  Professor Hadas' report shows

7    unequivocally the high degree of similarity between the content that appears in both the website

8    of Plaintiff as well as the Airon Defendants websites which are hosted by the Simple Defendants.

9    *See Hadas Decl at ¶¶* 56-99.  Professor Hadas describes this phenomenon as having a near "zero

10   probability" of occurring by independent coincidence.  *See Hadas Decl. At ¶ 69, 98.*

11   Therefore, even in the absence of the DMCA violations, the Simple Defendants have

12   facilitated the necessary predicate acts of illegal copying or conversion of Pacific's intellectual

13   property satisfying the basic core element of each of the 22 claims of relief that are alleged in

14   Plaintiff's unanswered Complaint.

15   Therefore, on this basis, the Simple Defendants should be adjudged as guilty on all 22

16   counts.

17   **C.    Calculation of Damages**

18   Damage awards are initially established by plaintiff establishing defendant's gross

19   revenue. *See 15 U.S.C. § 1125(a)* [trademarks]; *17 U.S.C. § 504(b)* [copyrights].  The infringer

20   usually must prove any deductible expenses for the identification of the net profit.

21   In the instant case, Defendants' costs for facilitating the illegally obtained revenue is

22   *diminimus*;  Defendants expended little if any time, cost, or effort other than hosting the Airon

23   Defendants' websites which contain content stolen from Plaintiff Pacific's WEBSITE!  *See*

24   *Koster Decl. at ¶'¶* 7-25.

25

26

27

28

**Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**

**Case No. CV-07-4131**

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    In addition, loss of goodwill, although difficult to establish, may be included in damage

2  awards.  *United States v. King Features, Enter., Inc.*, 843 F.2d 394, 400 (9th Cir. 1988).

3    In the instant case, Plaintiff has hired a consultant with expertise in measuring and

4  assessing Internet "traffic" at web sites.  Hayden Bond, plaintiff's consultant, has filed a very

5  detailed declaration with this application.

6    Mr. Bond details his method for measuring and extrapolating the amount of sales

7  generated from the volume of visitor traffic to the courtsonline.org website.  Mr. Bond's

8  methodology involves first assessing the volume of traffic visiting Defendant's site.  *See Bond*

9  *Decl. at ¶'s* 10-15.

10    Then using a conversion rate of 1.2%, and a price of $29.95, Mr. Bond was able to

11  calculate the Airon Defendants' monthly income at $633,875. *See Bond Decl. at ¶'s* 16-23.  This

12  then translates into total revenue for the infringement period in question of $19,001,250. *Id*.  The

13  Simple Defendants' website hosting activities for the Airon Defendants facilitated illegal revenue

14  generation for the Airon Defendants in excess of $19,000,000.  As described *supra*, the Simple

15  Defendants' website hosting activities were, and continue to be, in direct violation of the Digital

16  Millennium Copyright Act ("DMCA") (*17 U.S.C. §§ 501, et. seq.*).  These illegal activities of the

17  Simple Defendants also comprise the illegal conduct described in Plaintiff's Claims for Relief

18  [(1) through (22)] of Plaintiff's Complaint, Paragraphs 29-263.

19    **D.    Punitive Damages and Enhanced Damages**

20    Punitive damages are enhanced damages are available for almost every claim of relief

21  listed in the Complaint except for the state statutory trademark dilution claim.  In each instance,

22  the Court is faced with determining whether or not the acts of the Defendant are wilful and wilful

23  in such a sufficient degree as to merit the imposition of enhanced damages or punitive damages.

24  In short, the Court confronts the basic issue of whether or not the acts of Defendants Sullivan and

25  Simple are so egregious as to warrant the imposition of an exemplary punishment.

26

27    **Memorandum of Points and Authorities in Support of Application for Default Judgment**
**by Court;**

28    **Case No. CV-07-4131**
pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    Thus, at the minimum, Plaintiff would ask that the Court enter a punitive damage award

2    equal to one or two times actual damages against the Simple Defendants.

3    **III.    CONCLUSION**

4    For all of the foregoing reasons, Plaintiff prays for this Honorable Court to enter the

5    requested relief in the form of a Default Judgement and Permanent Injunction against the Simple

6    Defendants.

7

8                                                        Respectfully submitted,

9    DATED: February 28, 2008                            **NOVO LAW GROUP, P.C.**

10

                                        BY:    /s/Konrad L. Trope, Esq.
11                                             California State Bar No. 133214
                                               Novo Law Group, P.C.
12                                             4631 Teller Avenue, Ste 140
                                               Newport Beach, California 92660
13                                             Telephone: (949) 222-0899
                                               Facsimile: (949) 222-0983
14                                             E-mail: ktrope@novolaw.com
                                               Attorneys for Plaintiff PACIFIC
15                                             INFORMATION RESOURCES,
                                               INC.
16

17

18

19

20

21

22

23

24

25

26
                                        13
27    **Memorandum of Points and Authorities in Support of Application for Default Judgment**
      **by Court;**
                                                      **Case No. CV-07-4131**
28    pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

**PROOF OF SERVICE**

I am employed in the County of Orange, State of California in the office of a member of the Bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within action; my business address is: **4631 Teller Avenue, Suite 140, Newport Beach, California 92660**.

On **February 28, 2008,** I served the foregoing document described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY COURT**

on the interested parties in this action by placing □ the original ⊠ a true copy thereof enclosed in a sealed envelope addressed as follows:

***SEE ATTACHED SERVICE LIST***

**XX    BY MAIL:** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the addressee at the address on the attached Mailing List.

**BY FEDEX:** I deposited such envelopes at Irvine, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

**BY FACSIMILE:** I transmitted the foregoing document by facsimile to the party(s) identified above by using the facsimile number(s) indicated. Said transmission(s) were verified as complete and without error.

**BY INTERNET/E-MAIL:** I transmitted the foregoing document by e-mail to the party(s) identified above by using the Internet Protocol Addresses indicated. Said transmission(s) were verified as complete and without error.

**BY INTERNET/E-MAIL WITH CLERK OF THE COURT:** I certify that on ____ 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing as indicated on the attached Mailing List.

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

1
Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;
Case No. CV-07-4131
pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1    Executed on **February 28, 2008** at Irvine, California.

2                    /s/
                 J. Renée Nordyke
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                        2
27    **Memorandum of Points and Authorities in Support of Application for Default Judgment
                                   by Court;**
28                                                        **Case No. CV-07-4131**
      pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08

1

2

*SERVICE LIST:*
*Pacific Information Resources v Simple Communications, et. al.*
Case No. C-07-4131 MMC

3

4

**VIA U.S. MAIL**

5

6

William Travis Sullivan
4931 Mason Road
Clayton, Washington 99110

7

8

Simple Communications
4931 Mason Road
Clayton, Washington 99110

9

10

Simple Communications
701 22nd Avenue
Tuscaloosa, Alabama 35401

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
3
**Memorandum of Points and Authorities in Support of Application for Default Judgment by Court;**
**Case No. CV-07-4131**

pacific information resources\pleadings\sullivan and simple communications\application for default judgment p&a's final as filed 02 28 08