United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PACIFIC INFORMATION RESOURCES, INC.,

   Plaintiff,

   v.

SIMPLE COMMUNICATIONS, et al.,

   Defendants
                                                    /

No. C-07-4131 MMC

**ORDER AFFORDING PLAINTIFF OPPORTUNITY TO FILE SUPPLEMENT TO APPLICATION FOR DEFAULT JUDGMENT OR TO ELECT AWARD OF STATUTORY DAMAGES**

By separate order filed concurrently herewith, the Court has granted plaintiff Pacific Information Resources, Inc.'s ("PIR") application for entry of default judgment to the extent PIR seeks issuance of a permanent injunction against defendants Simple Communications and William Travis Sullivan (collectively, "Simple"), and has deferred ruling on the application to the extent PIR seeks an award of damages against Simple.

In its complaint, PIR alleges that Airon Corporation ("Airon"), a third party to the instant action, infringed PIR's copyrighted material and trademarks, and that such infringement was "induced, caused, or materially contributed to" by Simple. (See Compl. ¶¶ 93, 143.)[1]  In its application, PIR seeks an award of damages in the "sum of

---

[1] In its complaint, PIR alleges Airon's infringement occurred in connection with Airon's operation of a number of websites. In support of the instant application, PIR offers evidence to establish that Simple "provide[d] web hosting services to Airon" (see Trope Decl. ¶ 3), and that, upon being notified by PIR that Airon's websites were infringing, Simple did not disable the Airon websites (see id. Exs. 2, 3).

$19,000,000," as well as "punitive or enhanced damages as to be determined by the Court." (See Pl.'s Appl., filed February 27, 2008, at 5:11-12.) Having reviewed PIR's evidence, the Court finds PIR's showing to be insufficient to support any award of actual damages, let alone in the amount sought. Further, PIR offers no evidence, or even argument, to support an award of punitive or enhanced damages and thus has failed to show it is entitled to any such award. Accordingly, as discussed below, the Court declines at this time to issue an award of damages, but will afford PIR the opportunity to supplement its showing, or, alternatively, to elect to receive an award of statutory damages.

**I. Reliance on Airon's Profits**

At the outset, the Court observes that PIR seeks damages as measured by the gross profits earned by Airon. PIR has failed to cite, however, any authority to support its implicit argument that, in an infringement action, one defendant may be held liable for the gross profits earned by another defendant. Indeed, relevant authority appears to be to the contrary. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F. 2d 505, 519 (9th Cir. 1985) (holding each defendant in infringement action is "severally liable for his own illegal profit").

**II. Calculation of Airon's Profits**

Even assuming, arguendo, PIR is entitled to obtain from Simple an award measured by Airon's profits, the Court finds the evidence offered to establish Airon's profits, specifically, the opinion of Hayden Bond ("Bond"), who "estimate[s]"[2] Airon's profits to be $19,001,250, (see Bond Decl. ¶ 24), is insufficient to support a finding of profits in such amount.

---

[2] PIR fails to explain why it is relying on an estimate of profits earned by Airon, rather than on actual figures. In a related case, PIR sued Airon, Airon appeared, and the parties exchanged discovery. Although PIR and Airon subsequently reached a settlement, such settlement occurred after the close of fact discovery. (See Pacific Information Resources, Inc. v. Diana Musselman, C-06-2306 MMC, Docket Nos. 185, 365, 370.) Consequently, PIR had the opportunity to discover from Airon information concerning the operation of Airon's websites and the revenue Airon realized therefrom.

First, as with most experts, Bond does not purport to have personal knowledge of all of the facts on which he bases his opinion, and instead relies on a number of factual assumptions. Here, however, Bond assumes facts that are neither alleged in the complaint,[3] nor supported by evidence offered in connection with the instant application. In particular, Bond relies on the following factual assumptions: (1) each infringing Airon website was in operation from August 2005 through and including January 2008 (see id. ¶ 9); (2) Airon "enabled their websites to appear on searches conducted through . . . Yahoo, MSN and Google" (see id. ¶ 10); (3) Airon "[made] sure that [the] more popular search terms appear on its website[s]" (see id. ¶ 11); (4) Airon used "35 keywords . . . for the acquisition of traffic to the Airon [ ] Websites via paid means such as Google, Yahoo and MSN paid advertising networks" (see id. ¶ 23); (5) when internet users performed searches to locate websites that provided the types of services provided by Airon, Airon was repeatedly listed in "Position #1" in results provided by Yahoo, MSN & Google (see id.); (6) each person who paid a fee to Airon paid the sum of $29.99 (see id.);[4] and (7) Airon earned an identical amount of revenue from each of its infringing websites (see id. ¶ 24). Because Bond's opinion is dependent on the above-referenced assumptions, and there is no evidence in the record to support them, Bond's opinion is inadmissible. See Guidroz-Brault v. Missouri Pacific Railroad Co., 254 F. 3d 825, 829-31 (9th Cir. 2001) (holding district court properly excluded declaration of expert witness where expert's opinion was based on assumptions lacking support in the record).

Second, assuming PIR can supplement the record by offering evidence to establish each factual assumption on which Bond relies, PIR has failed to make any showing to

---

[3] In light of the entry of default, the factual allegations in the complaint are deemed true. See Cripps v. Life Ins. Co., 980 F. 2d 1261, 1267 (9th Cir. 1992).

[4] In an exhibit to the complaint, PIR offers copies of emails from persons who complained to PIR about Airon websites. (See Compl. Ex. 6.) To the extent those persons reported having paid Airon for its services, those payments were asserted to be in the respective amounts of $4.95, $19.00, $24.99, $29.00, $29.95, $35.00, $39.95, $49.95, or $60.00. (See id.) None appears to claim to have paid $29.99. The record thus contradicts Bond's assumption that all persons who paid for Airon's services paid the sum of $29.99.

3

support a finding that Bond's opinion is based on reliable methodology.  See Daubert v. Merrell Dow Pharmacies, Inc., 509 U.S. 579, 597 (1993) (providing expert testimony must "rest[ ] on a reliable foundation").  Such a showing is particularly warranted here, given that a number of statements made in Bond's declaration suggest the methodology employed may lack reliability.  For example,[5] Bond refers to one figure he used to calculate Airon's profits as involving "a pure judgment call" and another as a "rough estimate" (see Bond Decl. ¶ 23); such statements do not, in the absence of a further showing, suggest that Bond's calculations are the product of reliable methodology.  Further, Bond's calculations are based on an assumption that persons searching for the type of service provided by Airon's website would likely use particular search terms and thereafter purchase services from Airon (see id. ¶ 14, Ex. 1); some of those terms, however, for example, "criminal minds," appear, at least on their face, unrelated to the type of service Airon provides.[6]  Moreover, Bond fails to explain why the figures set forth in Columns B, C, and D in the exhibit attached to his declaration are reliable.[7]  As an additional example, Bond, based on his experience in the field of "Internet Quantitative Analysis and Assessment as applied to E-Commerce," states he believes 1.2% of persons who visit Airon's website "convert," i.e., pay Airon a fee (see id. ¶ 23); without explanation, however, Bond uses what he terms a

---

[5]The following examples are provided for illustrative purposes and are not intended to set forth all matters requiring further elaboration.

[6]"Criminal Minds" is the name of a popular weekly television series; other than to state that "[r]elevant keywords were chosen based on search volume," (see id. ¶ 23), Bond provides no explanation for his assumption that fans of such television series would have any likelihood of purchasing services from Airon.

[7]The figures set forth in Columns B, C, and D were provided to Bond by various entities who maintain "databases" and who advised Bond as to the number of times a day internet users perform searches using particular terms.  (See id. ¶ 23.)  The information provided to Bond by such entities is not consistent.  For example, with respect to the term "clermont county court records," one such entity advised Bond that 81,406 daily searches for such term were performed, the second advised Bond that the correct figure was a mere 732, while the third asserted the correct figure was 12,679.  (See id. Ex. 1.)  Moreover, Bond added the three figures together and divided them by three to produce what he characterizes as a "well-rounded sample of traffic."  (See id. ¶ 23.)  Bond does not explain why taking the average of three highly divergent estimates will produce a reliable figure for the number of searches performed using a particular search term.

4

"standard site conversion rate" of 1.5% to calculate the gross profits Airon assertedly received (see id. Ex. 1).

**III.  Effect of Settlement With Airon**

Finally, again assuming, arguendo, Simple can be held liable for Airon's profits, and further assuming a sufficient calculation of such profits, PIR's showing is incomplete, because PIR's infringement claims against Airon were settled, (see Pacific Information Resources, Inc. v. Diana Musselman, C-06-2306 MMC, Docket Nos. 365, 370), and PIR may not obtain a double recovery.  See Cal. Civ. Code Proc. § 877 (providing where plaintiff settles with one party "claimed to be liable for the same tort" as other parties, amount of settlement "shall reduce the claims against the others").[8]  Accordingly, PIR must indicate the amount by which any award against Simple based on Airon's profits is to be reduced.

**IV.  Directions to PIR**

If PIR wishes to pursue its claims for a monetary award against Simple based on Airon's gross profits, PIR must file a supplement to its application, and address therein each of the above-referenced deficiencies.  Alternatively, upon PIR's election to receive an award of statutory damages, the Court is prepared to enter a monetary judgment in favor of PIR and against Simple in the total amount of $250,000, calculated as follows: (1) $100,000, pursuant to 15 U.S.C. § 1117(d); and (2) $150,000, pursuant to 17 U.S.C. § 504(c).

**CONCLUSION**

For the reasons stated above, the Court will defer ruling on PIR's application for default judgment to the extent PIR seeks an award of damages.  PIR, no later than December 19, 2008, shall (1) supplement its application by addressing each of the

---

[8]State law governs the issue of a reduction based on amounts obtained in settlements of federal claims.  See, e.g., Getty Petroleum Corp. v. Island Transportation Corp., 862 F. 2d 10, 15 (2nd Cir. 1988) (holding, in trademark infringement action, state law determines whether non-settling defendant entitled to reduction in monetary judgment based on amounts paid to plaintiff by settling defendant).

deficiencies identified above, or (2) file a statement indicating it has elected to receive an award of statutory damages in the total amount of $250,000.  If PIR fails to timely take either step, the Court will deny the deferred portion of PIR's application for default judgment.

**IT IS SO ORDERED.**

Dated:  November 26, 2008

_____
MAXINE M. CHESNEY
United States District Judge